Our next case is Peeble v. Keith Kirgan, 5-160528. Whenever you're ready. May it please the Court, Counsel, I'm Paige Straughn and I represent Keith Kirgan. What we're here on today is the dismissal of his post-conviction petition after the second stage. It was dismissed prior to an evidentiary hearing being ordered. Mr. Kirgan is convicted of a criminal sexual assault. It was a bench trial. The general facts surrounding the case was his son, his son's girlfriend, and another girl, who is ultimately the complainant, came to his house. There's no dispute that Mr. Kirgan offered essentially everyone a little bit of Xanax, and she took it willingly because she had men's girlfriends. Later on in the evening, his son's girlfriend and the complainant are asleep in the living room floor, and depending upon her statement, you believe, Mr. Kirgan is found naked between them. All business ensues. Everybody gets worked up. The son, the girlfriend, and the complainant leave the house. They go to the son's mother's house, so this would be the shared son of Mr. Kirgan and the other mother, Kim Barbie Tucker. She is someone who works at the Amy Center, which is a child advocacy center, so she's very familiar with sexual assault and what have you. Statements are made there by Stephen to her about, I can't believe Dad did that. The complainant has no idea if she's been sexually assaulted or not. All she knows is she woke up half-clothed next to a naked man. Miss Barbie Tucker sends them to the hospital. The entire group goes to the hospital. Statements are made by Stephen Kirgan, the son of the defendant, by his girlfriend, who is now his wife, and by the complainant. The complainant still doesn't know, maybe to this day, still does not know if she was sexually assaulted, and she does not tell anyone that she was sexually assaulted. She says, I might have been. Police are called. Statements are given by Stephen Kirgan, by his wife, and by the complainant, who says, I don't know what happened. She has a fill bone rib kit done, and it shows the presence of semen. It shows no other damage, no tears, no bruising, none of that. Where did it show the presence of semen? In her anal region. There were swaths? Yes, swaths. In that region? Yes. At trial... Wasn't there also a test of the blood at the hospital? Yes, and some Xanax was found in her blood, which is a benzo. She was positive for that, but she testified that she did take Xanax on her own. She also testified that when she suspected that her drinks tasted funny, she poured them out. So, one of the statements that's given to police at the hospital is by Stephen Kirgan, where he says things like, my dad told me I'm going to drug her, and then I'm going to have sex with her when she passes out. That's one of the statements he allegedly gives the police at the hospital. His girlfriend gave similar. She knew less. She, too, thought her drink tasted funny and had poured it out. So the trial goes on, and the defendant's defense is this is a consensual act. That's what his defense was. Even though she doesn't know. Right. As we know, those are very blurry lines about who knows what and then they know it. When the retrospection kicks in, who knows? That's his defense of trial. She does testify at trial that she didn't know, that she didn't know what had happened. When defendant's son is called to testify, he doesn't remember what he told the police. Unfortunately, that opened the door to introducing his statement that he had given the police as now substantive evidence. And so that was admitted. The same is true of his girlfriend. She didn't remember what she had told the police either because she has his Amex prescription. She takes it regularly. It makes her not remember things. So her statement, too, was admitted. Why does that come in as substantive evidence? Why is that not impeachment? It should have been. Had he said, that's not what, had Stephen or the girlfriend said, that's not what I told them, then the statement would have been impeachment evidence. But he didn't deny giving a statement. He said, I don't remember telling you that. That's how they justified it. Certainly a questionable fall as well. That's what happened. So the defendant gets convicted. So he then files a post-conviction petition in which he alleges three violations. He alleges trial counsel was ineffective, appellate counsel was ineffective, and some newly discovered evidence. So in a post-conviction petition process, I'm sure you're familiar, the first stage he has to state the gist of a claim of a constitutional violation. At that point, if he does that, an attorney is appointed to represent him, modify that petition so that it makes a substantial showing of a constitutional violation. This case actually started at the second stage. The petition was filed by an attorney, and so the substantial showing standard is what the trial court was looking at. To make a substantial showing of a constitutional violation, all facts included in the petition are taken as true unless they are refuted by the record. Affidavits can be attached to the petition to support additional information that is outside the record. That's the point of a post-conviction petition. It allows outside-of-the-record information. In this case, there were two affidavits, one of the defendant and most significantly one of Stephen Kergan. And in his petition, he testified that, in fact, it wasn't true at trial when he said he didn't remember. He remembered a lot of things. But days before he was to testify, he was visited by the original officer who had written a statement and the state's attorney, and it scared him to death. And he was intimidated into saying what they wanted to say, wanted him to say on the stand. So that is our newly discovered evidence. That is not what happened. His affidavit establishes that that is not the accurate story of what happened that night. And that he would not have told the truth had he not been personally visited, intimidated by the police officer who took the statement and the state's attorney the day before the trial. So aside from that newly discovered evidence, I want to talk about the trial counsel's ineffective assistance because it's massive. The testimony of Kim Barbie Tucker, remember, the mother of Stephen and sworn enemy of the defendant, was allowed, and it was straight hearsay. Her testimony was that my son came to me crying and upset, and he said over and over again, I can't believe he did it. I can't believe Dad would do that to someone. He drugged her. She was allowed to testify to all of that with no objection on hearsay grounds. There's absolutely nothing about that that falls outside of hearsay, yet no objection was made on hearsay grounds. Defense counsel did object to her testifying because she wasn't on a witness list and some other reasons, but he didn't hit that big one. He didn't object on the basis of hearsay. So now the judge, because we had no jury at this trial, the judge hears the substantive statements that, substantive evidence of the plea statements that were made at the hospital that Stephen Kerrigan now says are not true and never were true, but now we hear her testimony that he said the exact same thing to her. The whole reason we do not allow consistent prior statements is because we believe what we hear over and over again. So the prejudicial effect of allowing Kim Barbie Tucker to speak as to what her son said to her about what happened at his father's house cannot minimize the probative effect of that. That is so prejudicial because it piles on to those previous statements. Interestingly, the details are wrong. The details are not consistent in any of these statements. There's talk about who knew if it was Xanax, who knew what was put in a drink, where it was put in a drink, who stood in what room. There are a lot of inconsistencies. Yet none of that is argued by trial counsel in closing. None of it. So what the judge had to consider was the defendant's claim that this was a consensual act. They focused very much on the provision of the Xanax while totally glossing over the fact that both girls who said their drinks tasted funny poured them out and didn't drink them. So they weren't under the influence of any Xanax that had been provided to them. Any influence of Xanax they were under was taken by them of their own accord. None of those things are highlighted. None of that's said in closing. So the judge has just a self-serving defendant who has a long record so he doesn't testify and statements that we now have an affidavit from Stephen Kergan saying those statements weren't true. They never were. And I wouldn't have made them if I wasn't intimidated. So these issues should have been raised on everything but the newly discovered evidence should have been raised on direct appeal. Absolutely. Instead, on direct appeal, counsel, who was actually Missouri counsel, and that may have led to this confusion, focused on a reasonable doubt argument that has absolutely no basis in the law regarding penetration. It indicated that he didn't know anything, didn't know the legal definition. And so he didn't focus on the issues he should have focused on. Trial counsel's failure to object to the hearsay evidence. Trial counsel's failure to impeach Kim Barbee Tuckner on the fact that she had a very close working relationship with the state's attorney. Well, I guess I'll stop. So we would ask that you would vacate or reverse the trial court's dismissal disorder and send it back and have an evidentiary hearing. Thank you. Thank you. Counsel? May I please report? Counsel? Jennifer Camden on behalf of the people. The whole argument can be difficult where the parties disagree about the facts, but that's the situation here, and I'd like to begin by addressing a factual dispute. In the opening brief, the defendant stated that the defense's theory of the case of trial was that the sexual contact was consensual. The state addressed this in the answer brief at pages 9 and 25 and 26, noted that the defendant hadn't provided any record of support for that assertion and noted that the defense's opening statement and closing argument focused solely on whether the state approved the element of penetration, not whether the state approved the element of lack of consent. The reply brief at pages 6, 8, and 9, and again today here, the defendant has reasserted, again, without record citation, the claim that the defendant's case at trial was that there was consensual contact. Are you saying that that wasn't true, that the record, when we read it, is not going to talk about consent? That's absolutely true, Your Honor. The defendant didn't testify. He didn't testify that there was consensual contact. He didn't testify at all. Right. So there was no evidence of consent, and there was no argument made as to consent. The defendant's argument today is that the defense at trial was consent. The defense at trial was not consent. The defense at trial was no penetration. And this isn't just an academic point. It matters. And it matters because the defendant's argument is that in raising claims of ineffective assistance of counsel in newly discovered evidence, the defendant is asking this Court to assess the probability of a different outcome at trial. In other words, whether the consent defense that the defendant says was raised would have been more likely or less likely to succeed if facts had been different, if counsel performed in different ways or if certain evidence had been admitted. His arguments are fundamentally framed by this assertion that his defense at trial was consent. The defendant isn't claiming that counsel was ineffective for failing to raise a consent defense, and he isn't claiming that there's newly discovered evidence of consent that would allow a consent defense to be raised for the first time. He's arguing that consent was raised and that that defense would have been more likely to succeed based on these unrelated claims that he's asserting in the postconviction petition. But how can you raise consent unless you have a witness, the victim, or the defendant testify? Did anybody – and we know the defendant didn't testify. We know the victim doesn't remember. Was there a witness, somebody who said they saw this? Well, Stephen testified that – or Stephen did not testify that he walked in on the defendant next to the victim. But his statement to the police was that he saw the two of them together naked on the floor. But that's identical to the testimony of the victim herself who did testify that she – or who told the nurse, the emergency room nurse, that she awoke with the defendant – sorry. Because she was next to her. Next to her. Actually, she told the nurse that she awoke with a grown man next to her. She didn't identify him as the defendant. But I do want to raise that as the threshold reason why this Court should affirm the dismissal of the second-stage petition is because it's based on an incorrect assertion about the nature of the defense at trial. As to the claim of the newly discovered evidence, to obtain relief, the defendant has to show that the claimed evidence was new, material, non-cumulative, and sufficiently conclusive that it would probably change the result on retrial. Now, at this stage, the State has to – we have to take the assertions in the petition as true, so the State is not contesting the first of those factors. But the other three, the defendant has not made a substantial showing of. First, Stephen's affidavit was not material to the issue in that the defense was no penetration and his affidavit doesn't relate to that at all. Also, the third factor, cumulativeness, isn't met because Stephen testified at trial that he did not remember the defendant saying that he had drugged the victim and intended to have sex with her. Well, that's exactly what the affidavit says as well. So in that respect, it's cumulative. Now, his affidavit's claim of police intimidation is not cumulative, but that shows – but that claim fails to meet the fourth requirement, that it's sufficiently conclusive that it would probably change the result on retrial. What I mean by that is that at retrial, the defendant's mother's testimony, that that's the testimony of Kim Barbie Tucker, who testified that her son arrived at her house that night very upset and said that he couldn't believe what his father had done, and that he saw – let me get this right – and that the girls felt tired and lay down, and that he later saw the defendant naked on the floor between the two girls, that testimony on retrial would be admissible to show that she – I'm sorry, that he made statements to her that were nearly identical to his later statements to police. He claimed, again, that he only made those statements because of this claim of intimidation, but he made substantially identical statements to his mother before the incidence of the alleged intimidation arose. So that would be admissible. And that's why the affidavit would not probably change the result on retrial, because it would completely – because the evidence for his mother would completely undercut his new claim of intimidation. I also have to point out that the defendant's conviction did not stand or fall on Stephen's statements to police. The Court also had before it at this bench trial the statement of Nikki to police, which she has not sought to recant. And the Court also had before it the victim's testimony, the victim's statement to the emergency room nurse, and the physical evidence, which Your Honor asked about, showing that at the hospital when the victim's body was examined, there was a DNA evidence from the defendant found both on the victim and inside the victim, which was conclusive proof of penetration, as the trial court stated in issuing its verdict of guilty. So for these reasons and the reasons stated in the people's answer brief, this Court should affirm the dismissal of the petition. Actually, with a little time remaining, I do want to point out also with regard to the defendant's fourth ineffective assistance of counsel argument. The people in the answer brief pointed out that the victim only told the nurse that she found a, quote, grown naked man next to her, not that she found the defendant next to her. And the people argued that that was not evidence regarding the identity of the perpetrator. The reply brief at page 8, the defendant argues that this was still identifying information in that the defendant was older than her, and in any event, he was, quote, the one to stand trial. Your Honor, there are millions of men in this country older than the 17-year-old victim, and so her statement that a grown naked man was found next to her was not an identifying statement. And in any event, the bench trial, the bench court, sorry, the court in this bench trial surely would not have drawn a presumption from the fact that the defendant had been charged in this case. Ultimately, what identified the defendant as the perpetrator wasn't any statement that the victim made to the nurse, but the DNA evidence collected at the hospital. Also, the defendant in the reply brief at page 8 raises for the first time a cumulative error argument. This argument was not made in the opening brief, so it's waived or forfeited under Rule 341. It also wasn't raised in the post-conviction petition itself, so it wasn't ruled on by the trial court, and it's not properly before this court. Thank you. Thank you. Counsel, you have five minutes. I guess we're going to keep disagreeing about whether consent was the defense. When the complainant herself can't tell you if she's been sexually assaulted or not, but there's evidence that there's been sexual activity, there's a question of consent. There also, not to be too telegraphic, but, I mean, we're all adults here, and we know that there's a lot of ways that materials can be put in a lot of places short of directly putting them there, and many of those things can be consensual. The complainant couldn't tell us that she wasn't involved in heavy petting with him. She didn't tell anyone about how they came to be naked. Her testimony was that she woke up and he was caressing her shoulder. That's interesting for someone who has forcibly raped a person. It's also interesting the way the scene is laid out by Stephen Kerrigan's testimony that he walked in there and saw my naked father between two women. One of them is my girlfriend, and everybody remains relatively calm about get up and let's leave this house. Those things don't make any sense. What it sounds like to me is that we had two grown adults who were probably not sober involved in some sort of consensual activity. When even the complainant can't tell you if she was assaulted or if she has sexual activity, there is a question of consent. That's where the consent defense comes from. That's why it was always an issue. In any number of ways, the DNA evidence could have gotten there. That DNA does not solve the day here. That is not the answer in the end all to this case. What is so vital about Stephen Kerrigan's testimony that the state wants to downplay is that he is the only one who ever said anything about essentially saying, Dad planned to do this. When you remove those or at least put in the next statement that he gives saying, that was never true and I only said it because they made me, that's significant. That's newly discovered evidence. And that has to be something that this court considers as at least relevant to an actual innocence claim. And keep in mind, we're not at the end of an evidentiary hearing here. We're not asking you to reverse anybody's conviction. We're asking you to let us prove it at a third stage evidentiary hearing where we no longer have a fair prosecution by Stephen Kerrigan. He's no longer scared to death that he's going to be the one who gets charged. He's not the one who has been visited by a state's attorney who's no longer in office. He can now tell you the truth without fear of what might happen to him. That's what can happen in an evidentiary hearing, and that's all we're asking you to give us. We only have to make a substantial showing that if our claims are true, that they could have deprived him of a, that they did deprive him of a fair trial. When he didn't have effective trial counsel, he didn't have effective appellate counsel, we have newly discovered evidence. This is a different picture than the one the judge saw before. This should not be so much about details of why Stephen Kerrigan may not have told the truth, what Nikki may not have remembered. It should be about whether this defendant, this defendant is who matters, got a fair trial and whether he's entitled to an evidentiary hearing to prove you that. And that's all we're asking. So we're going to ask that you would reverse the order and remand this for the proceedings persistent with the post-conviction. Pursuant to the post-conviction hearing end. Thank you. Thank you. The court will take that into consideration on the issue that's ruling in due course.